FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 31, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA B., | No. 2:24-CV-00364-ACE |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[1] | **ECF Nos. 10, 13** |
| Defendant. | |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF Nos. 10, 13. Attorney Thomas Bothwell represents Plaintiff; Special Assistant United States Attorney Jeffrey E. Staples represents Defendant. The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's motion, ECF No. 10, and **DENIES** Defendant's motion, ECF No. 13.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the named Defendant.

ORDER GRANTING PLAINTIFF'S MOTION. . . . - 1

### JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on March 26, 2021, alleging amended onset of disability beginning September 1, 2021.  Tr. 17, 98, 242-58.  The applications were denied initially and upon reconsideration.  Tr. 158-66, 173-83.  Administrative Law Judge (ALJ) Melissa Hammock held a hearing on November 1, 2023, Tr. 58-88, and issued an unfavorable decision on January 3, 2024.  Tr. 17-33.  The Appeals Council denied Plaintiff's request for review on September 23, 2024, Tr. 1-6, and the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 23, 2024.  ECF No. 1.

### STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the

ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show: (1) that Plaintiff can perform other substantial gainful activity; and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 3, 2024, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 17-33.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through December 31, 2026, had not engaged in substantial gainful activity since the September 1, 2021, amended alleged onset date. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: relapsing remitting multiple sclerosis (MS), degenerative disc disease of the lumbar and thoracic spine, obesity, major depressive disorder (MDD), generalized anxiety disorder (GAD), and posttraumatic stress disorder (PTSD). *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 21.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, with the following limitations:

> She can lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk in combination for two hours in an eight-hour workday. [Plaintiff] can occasionally stoop, kneel, crouch, crawl, climb ramps, and climb stairs, but she can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to temperature extremes and pulmonary irritants, and she can have no exposure to workplace hazards, including unprotected heights and moving mechanical parts. [Plaintiff] can perform simple, routine tasks, but not at a production rate pace, while she can make simple work-related decisions, adapt to occasional changes in the work routine, have frequent interaction with supervisors and coworkers, and have occasional interaction with the public.

Tr. 24.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 31.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could also perform jobs that existed in significant numbers in the national economy, including the jobs of marker, routing clerk, document preparer, and escort driver. Tr. 32.

1   The ALJ thus concluded Plaintiff was not under a disability within the
2   meaning of the Social Security Act at any time from at any time from the alleged
3   onset date through the date of the decision.  Tr. 31.

### ISSUES

5   Plaintiff seeks judicial review of the Commissioner's final decision denying
6   her disability insurance benefits under Title II and Title XVI of the Social Security
7   Act.  The question presented is whether substantial evidence supports the ALJ's
8   decision denying benefits and, if so, whether that decision is based on proper legal
9   standards.  Plaintiff raises the following issues for review (1) whether the ALJ
10  properly evaluated Plaintiff's subjective complaints; and (2) whether the ALJ
11  failed to fully develop the record.  ECF No. 10 at 7-17.

### DISCUSSION

**A.    Symptom Claims**

14  Plaintiff contends the ALJ failed to properly evaluate Plaintiff's symptom
15  claims.  ECF No. 10 at 7-16.

16  It is the province of the ALJ to make determinations regarding a claimant's
17  subjective statements.  *Andrews,* 53 F.3d at 1039.  However, the ALJ's findings
18  must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229,
19  1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an
20  underlying medical impairment, the ALJ may not discredit testimony as to the
21  severity of an impairment merely because it is unsupported by medical evidence.
22  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence
23  of malingering, the ALJ's reasons for rejecting the claimant's testimony must be
24  "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.
25  1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are
26  insufficient: rather the ALJ must identify what testimony is not credible and what
27  evidence undermines the claimant's complaints."  *Lester* at 834; *Dodrill v. Shalala*,
28  12 F.3d 915, 918 (9th Cir. 1993); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499

(9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]").  Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony.  *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 25.

### 1. Inconsistent with Objective Medical Evidence

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  An ALJ must, however, consider all the relevant evidence in the record and may not point to only those portions of the records that bolster their findings.  *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2011) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Here, the ALJ summarized records from prior to Plaintiff's alleged onset date, noting Plaintiff was diagnosed with MS in 2015, and that in August 2020 she sought treatment with a pain management provider to assess her for narcotic pain

medication for widespread body pain.  Tr. 25 (citing Tr. 471-75, 1543-49).  The ALJ a noted physical exam at that time showed mild tenderness over her lumbar and paraspinal muscles, and that "straight leg resting was limited due to low back pain," and that Plaintiff's body mass index (BMI) was 64.  *Id*.  The ALJ noted imaging from 2018 and 2019 indicated multilevel lumbar facet joint arthropathy, moderate to severe in degree at the L5-S1 level, along with mild to moderate multilevel disc degeneration with posterior disc protrusions in the thoracic spine. *Id*.  The ALJ noted MRI imaging of Plaintiff's brain in January 2020 indicated no significant change since 2018.  *Id*. (citing Tr. 458).  Both MRI exams, however, were performed in relation to her MS and showed multiple subependymal and periventricular white matter lesions.  Tr. 459.  An MRI in April 2022 also noted her history of multiple sclerosis and showed "overall stable appearance of mild to moderate pericallosal and periventricular demyelinating disease when compared to prior study.  No new lesions were suggested."  Tr. 2421.

The ALJ noted that Plaintiff stopped working between the third quarter of 2021 and a follow up in April 2022, but that she stated at that time that she loved her MS medication, Ocrevus, had done well with it and presented "at that time with a normal, non-ataxic gait and normal overall physical function except for slight weakness and hyporeflexia."  Tr. 26 (citing Tr. 2504).  The ALJ noted that while Plaintiff changed MS medications "due to reported dizzy spells associated with Ocrevus" and records showed increase in dosage of narcotic pain medication due to complaints of uncontrolled lumbar pain, and "reports of upper extremity symptoms consistent with remote history of carpal tunnel status post release surgery," that "overall Plaintiff's examination findings were normal with respect to gait, musculoskeletal function, neurological function, and overall physical function aside from notations of her BMI over 60 and some sensory loss in the right hand and to cold in the right foot."  Tr. 26 (citing Tr. 2432-43, 3270-74).

1    This is an incomplete discussion of the record cited.  Records cited from
2    December 2022 show several medication changes due to progression of MS as
3    well as side effects including lymphopenia.  Tr. 2432.  Her provider noted that
4    while Ocrevus was effective, Plaintiff experienced return of symptoms between
5    infusions.  *Id*.  The provider noted Plaintiff was on a new medication, Kesimpta,
6    "without concerns or infection," but that she was also reporting upper extremity
7    symptoms "some of which correlate with carpal tunnel syndrome and somewhat
8    sharp concerning for multiple sclerosis or C6 nerve impingement."  *Id*.  The
9    provider also noted her reports of numbness and "significant life events and
10   psychiatric issues."  *Id*.  Her provider indicated upper extremity decreased
11   sensation as noted by the ALJ, but also that Plaintiff had objective findings
12   including positive Phalen's and median nerve testing "consistent with recurrence
13   of carpal tunnel syndrome," and EMG testing as well as MRI of her cervical spine
14   was ordered at that time.  *Id*.  The records cited from a November 2022 visit for
15   back pain also show Plaintiff was treated for chronic pain secondary to
16   degenerative disc disease, but that her pain was not adequately controlled at that
17   time, despite opiate pain medication, which was increased.  Tr. 3270.  Upon exam
18   she was also noted to be morbidly obese, with BMI at that time of 64, and she was
19   diagnosed with "[c]lass 3 severe obesity . . . with serious comorbidity and . . . BMI
20   of 60.0 to 69.9 in adult."  Tr. 3273.
21        The ALJ's discussion of objective evidence and findings in these records is
22   not an accurate reflection of the records cited; the ALJ left out relevant findings
23   and selectively cited portions of the records showing milder findings while failing
24   to discuss objective evidence that supported Plaintiff's symptom reports, including
25   ongoing/progressive MS symptoms and side effects of treatment, which are
26   supported with objective findings including lab results.
27        The ALJ also concluded that examination findings before and after Plaintiff
28   stopped working were quite similar, "reflecting only mild weakness in some

muscle groups of [Plaintiff's] lower extremities," but the ALJ failed to cite to any records here. Tr. 27. Earlier in the decision the ALJ cited to a few exams (out of 3000 pages of medical records) and noted that in April 2021 Plaintiff had "nearly full motor strength in most of her body with only minor weakness noted, rated 4+/5, thought she did have mild weakness in multiple lower extremity muscles bilaterally rated as 4/5." Tr. 25 (citing Tr. 1551). Upon exam, however, the provider noted strength 4+/5 "except as detailed below," and strength in various muscle groups was then noted as 4 and 4-; and the provider did not use the term "mild." Tr. 1551. The ALJ left out the lowest measurement and did not discuss other portions of the physical exam performed by her neurologist, which also showed a timed walk score, a fatigue impact scale, and cranial nerve testing. Tr. 1550. The ALJ also noted that an April 2022 exam showed only "slight" weakness in hip flexion, Tr. 26 (citing Tr. 2504), but the term slight does not appear in the records the ALJ cited. On this record, where Plaintiff is diagnosed with MS and has reported weakness and balance issues and records show "good and bad days" related to MS symptoms and treatment, the ALJ appeared to minimize the records cited, and the ALJ's analysis is insufficient. *See* Tr. 73-78, 500.

The ALJ also did not discuss what appear to be other relevant findings from the exams cited. Tr. 25, 27. Records from the April 2022 neurology visit show Plaintiff was morbidly obese, that she had to change medications for her MS due to continuously feeling ill and labs showing persistently low lymphocyte count for more than six months, that she was "struggling with fatigue and increased symptoms about 2 months prior to her next dose" of Ocrevus, and that she reported increased migraines "approximately 20 a month" that were no longer controlled with medication; her provider also noted she had a recent diagnosis of sleep apnea, "which is likely contributing," and her provider noted Plaintiff had a fall when she was still working that exacerbated her chronic pain. Tr. 2500. Records also show fatigue remained a problem, she had reduced strength in her lower extremities, and

in October 2020 she was "unable to walk on her toes or her heels and [was] unsteady on tandem walk." Tr. 458.

The ALJ's selective summary of medical evidence and conclusory statements fail to meet the burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 644, 675 (9th Cir. 2017) (internal citations omitted). In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results, the ALJ's characterization of the record is also not supported by substantial evidence.

Accordingly, the ALJ's conclusion Plaintiff's symptom reports were inconsistent with the objective medical evidence is not supported by substantial evidence, and this was not a clear and convincing reason to discount her symptom claims.

### 2. Able to Work

The ALJ also found Plaintiff's ability to work at SGA levels near her alleged onset date inconsistent with her symptom claims. Tr. 27. An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim and working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding ALJ's adverse credibility determination in part because the claimant "recently worked as a personal caregiver for two years, and has sought out other employment since then"); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (finding that substantial evidence supported determination that claimant's back problems were not disabling where her condition remained constant for several years and the impairment had not prevented her from working during that time).

Here, the ALJ discounted Plaintiff's symptom claims because "she was still working at SGA levels in the third quarter of 2021, walking seven blocks to work

ORDER GRANTING PLAINTIFF'S MOTION. . . - 10

each day and spending most of the day on her feet . . . ." Tr. 27.  The ALJ concluded such work activity close to her alleged onset date and the fact that "examination findings before and after that point in time were quite similar, reflecting only mild weakness in some muscle groups of [Plaintiff's] lower extremities," supported some limitations but not to the extent alleged by Plaintiff. Tr. 27.  As discussed *supra* in relation to the objective medical evidence, however, the ALJ selectively cited the record and misstated findings from exams the ALJ cited, and the ALJ's conclusion she had only mild weakness upon physical exam was not supported by substantial evidence.

The ALJ also did not provide a citation to the record here, Tr. 27, and an exam the ALJ cited earlier in the decision to show she walked seven blocks and was on her feet at her job was dated May 2021, which is further from her alleged onset date than indicated by the ALJ.  Tr. 25 (citing Tr. 1544).  The notes cited here are labeled "history"; and according to Plaintiff's testimony she was no longer working a caregiver job after February or March 2021.  Tr. 71, 73.  She testified that while she tried to work other jobs through 2021, that her condition was worsening.  *Id*.  Further, the ALJ again failed to discuss relevant positions of the visit cited.  The following page of notes from the same appointment, for example, reveals Plaintiff's report at the May 26, 2021, appointment that while she had been doing pretty well "last week she fell . . . she said she lost her balance and her husband says that it is balance related . . . has been noticing over the last few months more missteps and balance issues."  Tr. 1545.  Records show she was also feeling "more dizzy and [with] more headaches."  *Id*.  Plaintiff alleged worsening of her condition, including balance issues and dizziness in 2021 that led to falls and inability to sustain work later that year, and at the hearing she amended her alleged onset date to September 2021 to better reflect at what point she alleged she could no longer work.  Tr. 64, 71, 73-74.  It is not clear when Plaintiff reported that she walked seven blocks to work each day and spent most of the day on her feet, but

based on the records cited by the ALJ it was not in the third quarter of 2021. *See* Tr. 25, 1544. While ability to work may rebut a Plaintiff's symptom claims, the ALJ appears to have misstated the record concerning when Plaintiff performed certain work activity, and provided no discussion of the work Plaintiff was performing, if any, later in 2021. On this record, the ALJ's conclusion that such activity was inconsistent with Plaintiff's symptom claims is not supported by substantial evidence.

Accordingly, the ALJ's conclusion that Plaintiff's symptoms were inconsistent with disability because she was still working prior to her alleged onset date and exam findings before and after that time were quite similar was also not a clear and convincing reason supported by substantial evidence to discount Plaintiffs symptom claims.

### 3. Improved with Treatment

The ALJ also discounted Plaintiff's symptom claims because she Plaintiff improved with treatment. Tr. 25-27. An ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving symptoms can undermine a claim of disability); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's symptoms improved with the use of medication).

Here the ALJ concluded that Plaintiff improved with treatment, noting that after she was prescribed Norco and started Ocrevus treatments "she reported she was feeling much better and more functional and getting out, and trying to do more walking." Tr. 25 (citing Tr. 500). The record cited is from 2020, however, which is prior to Plaintiff's amended onset date in 2021, and while she reported at that time that she was "feeling less pain" since starting opiate pain medication, she reported only that she had "good and bad days" related to MS and treatment. Tr. 500. As noted *supra*, records from April 2022 also reveal she had had difficulty

ORDER GRANTING PLAINTIFF'S MOTION. . . - 12

tolerating Ocrevus infusions and she was switched to a different medication. Tr. 2500, 2505. The ALJ also noted elsewhere in the decision that Plaintiff reported increased symptoms with Ocrevus treatment, and that she reported falls, increased headaches, and weakness, and she required increased dosage of narcotic pain medication for chronic pain; and records show she was prescribed a walker with wheels by her neurologist in 2023. Tr. 25-26; *see* Tr. 3226. Accordingly, without further discussion, the ALJ's conclusion that Plaintiff improved with treatment is not supported by substantial evidence and this was also not a clear and convincing reason to discount her claims.

### 4. Activities

The ALJ also discounted Plaintiff's symptom claims based on her activities. Tr. 28. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. "Only if the level of activity is inconsistent with Claimant's claimed limitations" do daily "activities have any bearing on Claimant's credibility." *Ferguson,* 95 F.4th at 1203 (quoting *Reddick*, 157 F.3d at 722).

Here, the ALJ noted Plaintiff could drive a vehicle, handle bank accounts, pay bills, shop, clean, prepare simple meals, and use household appliances, and that she spent time with family, watched movies, and took care of a household

including chores.  Tr. 22-23.  It is well-established, however, that a claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.  At the 2023 hearing Plaintiff testified she had fallen twice, had chronic fatigue, could not stand or walk for long, and had to take breaks during any activity that required her to be on her feet due to fatigue and pain, and that she had to lie down an hour or two during the day due to dizziness and pain.  Tr. 74, 76-78.  Plaintiff also testified that her daughter helps her make dinner and stays by her if she is not feeling well or feels like she might fall.  Tr. 75-76.  She testified she was prescribed a rolling walker earlier in 2023 and used it for walking outside her home; and she testified she used a cart she can sit in to grocery shop because it hurt to walk around the store.  Tr 80.

None of the activities listed by the ALJ are inconsistent with Plaintiff's allegations of chronic pain and other symptoms preventing her from working a full-time job during the period at issue, and the ALJ's conclusion that Plaintiff's activities do not support her allegations of disabling symptoms is not supported by substantial evidence.

The ALJ did not provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom claims.  Additionally, the ALJ erred in misstating the record and selectively citing portions of the record showing milder findings while failing to discuss evidence supportive of Plaintiff's symptom reports during the period at issue.

The case is remanded for the ALJ to reassess Plaintiff's symptom claims and conduct the sequential analysis anew, reevaluating Plaintiff's symptom claims and their impact on each step of the sequential analysis throughout the period at issue with the assistance of medical expert testimony.

## B.    Develop the Record

Plaintiff contends the ALJ also erred in failing to develop the record.  ECF No. 10 at 16-17.  The ALJ has an independent duty to fully and fairly develop a

ORDER GRANTING PLAINTIFF'S MOTION. . . - 14

record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1995).

As the claim is remanded for reconsideration of Plaintiff's symptom claims, and to reperform the sequential analysis with the assistance of medical expert testimony, the ALJ will ensure the record is fully developed with the assistance of medical expert testimony.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error.

On remand, the ALJ will update the medical record. The ALJ will reassess all medical evidence and reperform the sequential analysis with the assistance of medical expert testimony, reconsidering Plaintiff's symptom claims any other evidence or testimony relevant to Plaintiff's disability claim.

Upon remand, the ALJ will obtain all updated medical records and reevaluate all medical evidence of record. The ALJ is instructed to reassess plaintiff's subjective complaints and to perform the sequential analysis anew with the assistance of medical expert testimony, making new findings on each of the five steps of the sequential evaluation process, and taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion, **ECF No. 10**, is **GRANTED**.

2.    Defendant's Motion, **ECF No. 13**, is **DENIED**.

3.    The matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

4.    An application for attorney fees may be filed by separate motion.

ORDER GRANTING PLAINTIFF'S MOTION. . . - 15

1    The District Court Executive is directed to update the docket sheet to reflect
2  the substitution of Frank Bisignano as Defendant, file this Order and provide a
3  copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for
4  Plaintiff and the file shall be **CLOSED**.

5    DATED July 31, 2025.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION. . . - 16